IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RUFFINO TELLEZ-ARAUJO, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 3:12-cv-260 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Sharp |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Ruffino Tellez-Araujo ("Tellez"), a prisoner presently housed at the Federal Correctional Institution in Manchester, Kentucky, brings this *pro se* action pursuant to 28 U.S.C. § 2255 to set aside, vacate and correct an allegedly illegal sentence imposed by this Court on February 12, 2009 after a jury trial. For the reasons set forth herein, the Court finds that Tellez is not entitled to the relief sought.

I.      **Factual Background and Underlying Proceedings**

Tellez was indicted on July 11, 2007 in Case No. 3:07-cr-124 in Count One of a three-count indictment, for conspiring to distribute and to possess with intent to distribute five or more kilograms of cocaine. The indictment alleged that the conspiracy began at least as early as July 2006 and continued through October 26, 2006. On July 22, 2008, Tellez proceeded to trial along with one of his co-defendants, Anthony Labron Davis, who was also charged as a co-conspirator in Count One of the indictment, before District Judge Robert Echols. On July 31, 2008, the jury returned a guilty verdict as to both defendants, and found the defendants responsible for 500 grams or more of cocaine.

On February 12, 2009, Judge Echols sentenced Tellez to 300 months' imprisonment, to be followed by eight years of supervised release. (Case No. 3:07-cr-124, ECF No. 184.) The Sixth Circuit affirmed the verdict and the sentence in an opinion issued January 12, 2011. *United States v. Davis*, 407 F. App'x 32 (6th Cir. 2011). In its opinion, the Sixth Circuit summarized the evidence against Tellez and rejected his arguments that the district court abused its discretion or otherwise erred in (1) refusing to grant a mistrial after Tellez's co-defendant, Davis, encountered two of the jurors in a hallway near the jury room; (2) denying Tellez's motion for a severance; (3) denying Tellez's motion for acquittal based on a

variance between the indictment and the evidence produced at trial; (4) using acquitted conduct to calculate Tellez's offense level at sentencing, specifically, by finding by a preponderance of the evidence that Tellez was responsible for conspiring to distribute at least 50 kilograms of cocaine even though the jury only convicted him for conspiring to distribute 500 grams of cocaine; (5) enhancing Tellez's sentence based on a finding by a preponderance of the evidence that Tellez possessed a firearm while committing the drug-trafficking offense; (6) applying career-offender status to Tellez and refusing to depart downward; and (7) imposing a procedurally and substantively unreasonable sentence. The Supreme Court denied Tellez's petition for a writ of certiorari on October 5, 2011.

**II.     Tellez's § 2255 Motion**

Tellez filed the present Motion to Vacate on March 12, 2012, asserting that he was deprived of his right to effective counsel as guaranteed by the Sixth Amendment to the United States Constitution, on the basis that his attorney:

> (1)  failed to request a jury instruction under Sixth Circuit Pattern Jury Instructions 7.07 and 7.08;
>
> (2)  failed to file a motion to dismiss the indictment for violation of the Speedy Trial Act;
>
> (3)  failed to argue and to demonstrate at sentencing that the firearm enhancement did not apply; and
>
> (4)  failed to object to the Court's finding by a preponderance of the evidence, at sentencing, that the petitioner was responsible for the total quantity of drugs distributed through the conspiracy, 50 kilograms of cocaine.

(ECF No. 2 at 1–2.)

Shortly after Tellez's § 2255 motion was filed, this Court entered an order (ECF No. 3) directing the respondent to answer, plead or otherwise respond. Rule 5, Rules Gov'g § 2255 Cases. The government has filed its answer, asserting that Tellez is not entitled to relief on any of the grounds asserted. (ECF No. 12.) On June 11, 2012, Tellez filed a reply brief (ECF No. 13), responding to the government's answer and reiterating many of the same arguments raised in his initial memorandum.

**III.    Analysis**

***A.     Whether a hearing is required***

A prisoner who files a motion under § 2255 challenging a federal conviction is generally entitled to "a prompt hearing" at which the district court is to "determine the issues and make findings of fact and

conclusions of law with respect thereto." 28 U.S.C. § 2255. The hearing is mandatory "unless 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (quoting 28 U.S.C. § 2255(b)). Thus, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Rule 4(b) of the Rules Governing § 2255 Proceedings provides that if it plainly appears from the face of the § 2255 motion, exhibits, and prior proceedings that the petitioner is not entitled to relief, the judge shall make an order for its summary dismissal.

In this case, Tellez requests a hearing for the purpose of "allow[ing] [him] to develop a record for purposes of appeal." (ECF No. 2, at 36.) Upon consideration of the original motion and supporting memorandum, the government's response and the underlying factual record, the Court finds that there are no evidentiary issues to be resolved and that an evidentiary hearing is not required. The Court will dispose of the motion as the law and justice require. Rule 8(a), Rules Gov'g § 2255 Cases.

**B.     Standard of review**

To be entitled to relief, a prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion, a movant "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process."

*Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks and additional citation omitted)).

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows either (1) cause and actual prejudice, *United States v. Frady*, 456 U.S. 152, 167--68 (1982) (citations omitted), or (2) "actual innocence," *Bousley v. United States*, 523 U.S. 614, 621–22 (1998) (citations omitted). A claim of ineffective assistance of counsel, however, is not subject to the procedural-default rule. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective-assistance claim may be raised in a collateral proceeding under § 2255 regardless of whether the movant could have raised the claim on direct appeal. *Id.* In the present motion, Tellez raises only ineffective-assistance claims, which he was not required to raise below, so procedural default is not at issue.

### C. Consideration of Tellez's claims

The Sixth Amendment provides that a criminal defendant is entitled to effective assistance of counsel. *McMann v. Richardson*, 379 U.S. 759, 771 (1970). To make out a claim of ineffective assistance of counsel, a movant must show both that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687--88 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

In *Strickland*, the Supreme Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and must avoid the "second-guess[ing of] counsel's assistance . . . , [as] it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. In order to avoid "the distorting effects of hindsight," a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

Moreover, in evaluating the prejudice prong, the Court must be mindful that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* (citation omitted). Rather, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. With these principals in mind, the Court will proceed to evaluate the movant's claims.

### (1) Counsel's failure to request a jury instruction under Sixth Circuit Pattern Jury Instructions 7.07 and 7.08

Pattern Instruction 7.07 pertains to the testimony of a witness who has been promised immunity or reduced criminal liability by the government, and instructs the jury that it is permissible for the government to promise a cooperating witness a reduced sentence or even that he will not be prosecuted in exchange for his testimony against the defendant. Pattern Instruction 7.08 similarly pertains to the jury's consideration of the testimony of an accomplice involved in the same crime that the defendant is charged with committing. Both instructions contain three important elements: (1) an admonition to the members of the jury that they should consider the testimony of such witnesses with more caution than the testimony of other witnesses; (2) an instruction that the jury should not convict the defendant based on the uncorroborated testimony of such a witness unless they believe the witness's testimony beyond a reasonable doubt; and (3) a reminder that the fact that the accomplice or cooperating witness has pleaded guilty to a crime is not evidence that the defendant is guilty.

The jury instructions given to the jury by Judge Echols at the close of Tellez's trial did not mirror *verbatim* Pattern Instructions 7.07 and 7.08, but they incorporated each material element of the pattern instructions. Specifically, Judge Echols instructed the jury that they should consider the testimony of an accomplice with extreme caution; that the jury should not convict the defendant solely on the uncorroborated testimony of an accomplice unless the jury believed such testimony beyond a reasonable doubt; and that the jury should not consider the fact that the accomplice pleaded guilty as evidence that the defendant is also guilty. The full instruction is as follows:

You've heard the testimony of witnesses who were involved in the same crime that the defendant is charged with committing. I refer to these witnesses as accomplices.

An accomplice is one who unites with another in the commission of a crime voluntarily and with common intent. An accomplice does not become incompetent to testify as a witness because of the participation in the criminal act charged, but you should consider the testimony of accomplices with more caution than the testimony of other witnesses.

The testimony of an accomplice alone, if believed by you, may be sufficient to sustain a verdict of guilty, even though the testimony is not corroborated or supported by other evidence.

Because of the peculiar relationship and interest of an accomplice, you should examine his or her testimony with caution and weigh it carefully. If after scrutinizing the testimony of an accomplice you decide to accept it, you may give it whatever weight you find it deserves. You should not convict a defendant upon the unsupported testimony of an accomplice, however, unless you believe that unsupported testimony beyond a reasonable doubt.

In this case, you've heard testimony from accomplices who have pled guilty to felony charges in this or other courts. As a part of their guilty plea agreement with the Government, these witnesses agreed to cooperate with the Government and to testify truthfully. And the Government promised to bring their cooperation to the attention of the sentencing court and to recommend that their sentences be reduced in exchange for their agreements to plead guilty and testify truthfully at this trial.

It is permissible for the Government to make such a recommendation. However, you should know that the Court is not bound by such recommendation, and the final decision as to the sentences of these witnesses is solely left to the Court.

The fact that these witnesses have pleaded guilty to a crime is not evidence that the defendant is guilty. You cannot consider this against the defendant in any way.

I further charge you that to the extent, if any, that you find the testimony of an accomplice tends to support the contention of the defendant, that is tends to show the defendant to be not guilty, you may consider such testimony in that respect and weigh such testimony along with the other evidence in this case under the rules given to you in this charge, and you may find the defendant not guilty based upon an accomplice's testimony.

(Case No. 3:07-cr-124, Trial Tr. Vol. 7, at 1485:2–1486:22.)

In sum, the instructions actually given to the jury in this case on the topic of co-conspirator and cooperating witnesses were basically equivalent to Pattern Instructions 7.07 and 7.08. Tellez has not pointed to any portion of the Pattern Instructions he believes was missing from the instructions as given to the jury or shown how the failure to incorporate any such portion prejudiced him. Because the Court's standard instruction included in substance the language of Pattern Instructions 7.07 and 7.08, the Court cannot find that defense counsel was ineffective for failing specifically to request Pattern Instructions 7.07 and 7.08. Tellez is not entitled to relief on this ground.

**(2) Counsel's failure to file a motion to dismiss the indictment for violation of
the Speedy Trial Act**

Tellez argues in support of his second claim of error that he was arraigned on August 2, 2007,
which, he claims, meant that his trial should have begun no later than October 11, 2007 to fall within the
seventy-day time-limit established by the Speedy Trial Act ("STA"). He notes that the Court did not enter
an order setting the trial date until December 6, 2007, and then scheduled trial to begin January 29, 2008,
more than three months after the date Tellez calculates as the expiration of the seventy-day period.
Tellez claims his counsel was ineffective for not filing a motion to dismiss the indictment after the trial
court "failed to make adequate on the record findings to excuse the STA's seventy days' time limit from
the date of his initial appearance of August 2, 2007, up to and including January 15, 2008, when
Petitioner's first motion to continue was filed with the Court." (ECF No. 2, at 20–21.)

As an initial matter, the Court notes that Tellez's claim is not strictly a Speedy Trial Act claim.
Such a claim was waived because Tellez did not raise it in a pretrial motion to dismiss. Rather, it is a
claim that his counsel was constitutionally ineffective for failing to raise STA issues. To prevail on this
claim, Tellez must first demonstrate that there was an STA violation. If he succeeds in making that
threshold showing, he must also show that his counsel was ineffective for failing to object to the violation,
and that the result of his trial or appeal would have been different but for his counsel's ineffectiveness.

As suggested above, the STA generally requires that an accused be brought to trial within
seventy days from the filing of the information or indictment, or from the date he first appears before a
judicial officer (United States magistrate or federal district judge) of the court in which the charge against
him is pending, whichever date last occurs. 18 U.S.C. § 3161(c)(1). However, the STA also incorporates
some flexibility into this otherwise strict mandate by excluding certain pretrial delays that have the effect
of stopping the speedy-trial clock. *See* 18 U.S.C. § 3161(h) (enumerating periods of delay that are to be
excluded from the calculation); *United States v. Mentz*, 840 F.2d 315, 325 (6th Cir. 1988) ("Congress saw
the need to 'build into [the Act's] fixed limits sufficient flexibility to make compliance with them a realistic
goal.'" (citing S. Rep. No. 212, 96th Cong., 1st Sess. 9 (1979)).

For instance, 18 U.S.C. § 3161(h)(6) requires excluding the "reasonable period of delay when the
defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for

severance has been granted." The Supreme Court and, consequently, the Sixth Circuit, have interpreted this provision to mean that the seventy-day time period begins to run on the date the last co-defendant has his initial appearance. *See*, *e.g.*, *Henderson v. United States*, 476 U.S. 3221, 323 n.2 (1986) ("All defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant."); *United States v. Culpepper*, 898 F.2d 65, 66 (6th Cir. 1990) ("Where multiple defendants are charged in an indictment and no motion for severance has been granted, only one speedy trial clock governs the action."); *United States v. Blackmon*, 874 F.2d 378, 380 (6th Cir. 1989) ("All defendants who are joined for trial generally fall within the speedy trial computation of the latest co-defendant.").

Tellez was charged in Count One of the indictment with four co-defendants. Although Tellez was arraigned on August 2, 2007 (Case No. 3:07-cr-124, ECF No. 18), the initial appearance of the last co-defendant, Alejandro Rivas Najera, did not occur until November 15, 2007 (3:07-cr-124, ECF No. 65). Thus, pursuant to the precedent cited above, the STA clock for all four co-defendants began to run after November 15, 2007.

On December 6, 2007, the Court entered an order setting the case for trial on January 29, 2008. However, on December 17, 2007, Tellez's co-defendant, Robert Carney, filed a motion to continue trial, which tolled the STA clock for all the defendants. 18 U.S.C. § 3161(h)(1)(D); *United States v. Tinklenberg*, ---U.S. ----, 131 S. Ct. 2007, 2011 (2011) (holding that the filing of any motion tolls the running of the STA clock automatically). Among the reasons cited in support of the motion to continue was the fact that the government had produced a "monumental amount of discovery (including hundreds, if not thousands, of recorded calls) in this complex, multi-defendant wiretapping case," as well as over 350 pages of paper discovery, which he had not had time to review. (Case No. 3:07-cv-124, ECF No. 77, at 2.) On January 15, 2008, still within the seventy-day period, Tellez, through his counsel, filed a notice that he did not object to his co-defendant's motion to continue; his speedy-trial waiver was filed a few days later. (Case No. 3:07-cv-124, ECF No. 85.) The ends-of-justice motion to continue was granted and

the case rescheduled.[1]  Tellez apparently does not object to any of the subsequent continuances of the trial date.

Clearly, if Tellez's counsel had filed a motion to dismiss any time after October 11, 2007 up until November 15, 2007, such motion would have been denied on the grounds that the STA clock had not yet even begun to run (or was tolled), pursuant to 18 U.S.C. § 3161(h).  If he had filed a motion to dismiss between November 15, 2007 (the date the last co-defendant was arraigned) and December 17, 2007 (the date another co-defendant filed a motion to continue), such motion would have been denied on the basis that the seventy-day period had not yet expired.  Between December 17, 2007 and January 15, 2008, the clock was tolled by the filing of the motion to continue, which the Court did not actually rule on until February 4, 2008, which restarted the clock.

In short, Tellez has not shown that a violation of the STA occurred; axiomatically, he cannot show he was prejudiced by his counsel's failure to file a motion under the STA that necessarily would have been denied.  Tellez is not entitled to relief on this ground.

> **(3) Counsel's failure to argue and to demonstrate at sentencing that the firearm enhancement did not apply**

Section 2D1.1(b)(1) of the U.S. Sentencing Guidelines provides for a two-level enhancement to a defendant's base offense level if the United States is able to prove by a preponderance of the evidence that the defendant "possessed" a firearm while committing a drug-trafficking offense, and the defendant is unable to demonstrate that it "was clearly improbable that the weapon was connected to the offense." *United States v. Davdson*, 409 F.3d 304, 312 (6th Cir. 2005); *see* U.S.S.G. § 2D1.1, App. Note 3(A) (as an example, noting that the enhancement would not apply if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet).  In his § 2255 motion, Tellez argues that he was denied his right to effective assistance of counsel as a result of his attorney's failure to argue and demonstrate at the sentencing hearing that § 2D1.1(b)(1) did not apply, because the evidence did not show that he was in possession of a gun while committing a drug crime.  Tellez points out that in the opinion affirming his

---

[1] Judge Echols granted the motion and set a new trial date of April 8, 2008.  Several subsequent motions to continue and speedy-trial waivers were filed and granted; the matter actually proceeded to trial on July 22, 2008.  Tellez does not object to any of these resettings.

conviction and sentence on direct appeal, the Sixth Circuit noted that the evidence connecting Tellez with a gun was "questionable." (ECF No. 1, at 16.)

Contrary to Tellez's contention, however, his attorney did argue and attempt to demonstrate that Tellez should not be held responsible for possessing a firearm during the course of the cocaine conspiracy, and he raised the issue on appeal. In his sentencing-position memorandum, Tellez's counsel argued at length that the two-level firearm enhancement recommended in the Presentence Investigation Report ("PSR") was "not supported by the facts or the law," and that there was no competent evidence in the record to establish that Tellez possessed a weapon in connection with cocaine trafficking. (Case No. 3:07-cr-124, ECF No. 172, at 4–6.) Counsel argued out that firearms were not mentioned at trial, and the evidence that Tellez possessed a firearm came largely from the "unsworn proffer statement(s)" provided by an unindicted government witness, Robert Sherrill. (*Id.* at 5.) Judge Echols nonetheless imposed the firearm enhancement.

On appeal, Tellez's attorney reiterated his claims that the evidence was insufficient to establish that Tellez possessed a weapon in connection with the commission of the cocaine-trafficking conspiracy. The Sixth Circuit rejected the argument, stating:

> Several witnesses testified that they saw Tellez with a "Dillinger" when he was delivering cocaine, and one witness testified that he sold Tellez a Smith and Wesson. Tellez contends that these witnesses are not credible, and that the government failed to conclusively connect Tellez with a firearm. Although the strength of the evidence connecting Tellez with a gun is questionable, concluding that Tellez possessed a firearm is a permissible view [ ] of the evidence. Moreover, Tellez provides no evidence that it was clearly improbable that any gun in his possession was not used in connection with the conspiracy.

*United States v. Davis*, 407 F. App'x 32, 42 (6th Cir. 2011) (internal citations and quotation marks omitted).

Tellez appears to be arguing that the evidence was insufficient to support the enhancement because there was no evidence that he actually used a weapon in furtherance of his drug trafficking activities. (ECF No. 2 ("There is simply nothing on the record to suggest that Petitioner used a gun during a drug crime as required by § 2D1.1(b)(1).") Tellez misapprehends the guideline: Nothing in it required him to *use* or even to display a weapon in furtherance of a drug crime; he simply had to "possess" a

weapon "during" a drug offense.  Judge Echols considered the evidence in support of that finding, and the Sixth Circuit held that the evidence was sufficient to support the enhancement.

Thus, the question posed here is whether Tellez's counsel was ineffective merely because the district court and the Sixth Circuit rejected his arguments.  The mere fact that counsel was unsuccessful does not establish that his representation of the defendant as a whole was ineffective.  Tellez argues there were more arguments his counsel should have made, but his conjecture does not establish that these arguments would have been successful either, assuming they are supported by the factual record.  In short, Tellez has not pointed to any basis for concluding that his counsel's error, if he made any error, was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.

Further, Tellez could not establish prejudice even if he were able to show that his counsel was ineffective.  Tellez is correct that the two level enhancement of his base offense level, from 36 to 38, resulted in an increase in his sentencing range from 324 to 405 months' imprisonment to 360 months' to life.  However, as the government points out, Tellez was sentenced as a career offender under U.S.S.G. § 4B1.1 because he had two prior convictions for felony drug offenses, which resulted in a guidelines range of 360 months to life.  The Sixth Circuit affirmed that finding as well.  Thus, even if the gun enhancement had not applied, Tellez's sentencing range would still have been 360 months to life, because § 4B1.1 provides that if a defendant's offense level as a career offender is higher than his otherwise applicable offense level, the career-offender level applies.  Tellez therefore cannot establish that he was prejudiced by the two-level enhancement to his base offense range.[2]

> **(4) Counsel's failure to object to the Court's finding that the petitioner was responsible for the total quantity of drugs distributed through the conspiracy**

Tellez concedes that his counsel argued at sentencing that the Court's decision to find him responsible for conspiring to distribute at least 50 kilograms of cocaine violated his Sixth Amendment right to a jury trial.  Tellez argues, however, that his counsel was ineffective because he limited his

---

[2]  Judge Echols also granted Tellez's motion for a downward variance, sentencing Tellez to 300 months, or five years below the bottom of his otherwise-applicable guidelines range.  Under these circumstances, Tellez cannot establish that he was prejudiced by his counsel's failure to establish that the gun enhancement should not have applied.

challenge to the constitutional issue which "was for naught from its inception" (ECF No. 2, at 32), based on the Sixth Circuit's decision in *United States v. White*, 551 F.3d 381 (6th Cir. 2008) (en banc). Instead, according to Tellez, his counsel should have argued that Tellez could only be held responsible under the Sentencing Guidelines "for that conduct which is reasonably foreseeable within the confines of the conspiracy, by applying the Sentencing Guidelines to each defendant convicted for their role in the conspiracy," and that the district court was required to "differentiate between the coconspirators and make individualized findings of fact for each defendant." (ECF No. 2, at 33.)

Tellez fails to recognize that the *White* decision was issued after his sentencing hearing. The argument ultimately failed on appeal because of the superseding decision in *White*, but his counsel was not ineffective by virtue making the argument. Moreover, Tellez's argument that his counsel erred by not objecting to the trial court's failure to make a "'searching and individualized inquiry' as to whether [Tellez] should be held accountable for the conduct of others in furtherance of the execution of the jointly-undertaken criminal activity" is simply beside the point. The sentencing transcript reveals that Judge Echols clearly did not hold Tellez accountable for the conduct *of others*. Instead, he determined based on a preponderance of the evidence presented that Tellez was *personally* responsible for trafficking well over 50 kilograms of cocaine. The evidence in the record was sufficient to support that conclusion. For instance, Tellez's brother, Fermin Tellez-Araujo, testified that the total value of the cocaine he sent to Tellez from Texas was approximately $1,000,000. As noted in the Presentence Investigation Report ("PSR"), at that time, the price of a single kilogram of cocaine was approximately $18,000, from which it could be deduced that Tellez received roughly 55.5 kilograms of cocaine from his brother alone. (Case No. 3:07-cr-124, PSR, ECF No. 191, at 8.) Other evidence in the record showed that Tellez received cocaine from other people as well. In addition, one of Tellez's customers, Robert Sherrill, testified that he obtained a total of approximately 50 kilograms from Tellez during 2005 and 2006. Other testimony established that Tellez was involved in the distribution of cocaine to other individuals. Based on this and additional evidence presented at trial, the PSR concluded that Tellez was involved in the distribution of at least 50 kilograms but less than 150 kilograms of cocaine. (*Id.* at 9.)

At the sentencing hearing, Tellez's counsel argued that his client did, in fact, oppose the government's suggestion that a preponderance of the evidence supported a finding that Tellez was

involved in distributing more than 50 kilograms of cocaine. (*See* Trial Tr., Vol. 9, ECF No. 217, at 1550:2–6 ("They [the jury] wouldn't even go to 5 kilograms. And the Government wants it to be proven by some preponderance of the evidence here this morning that my client makes no challenge to the fact that there was more than that involved. He obviously does make a challenge to that.").) Regardless of that challenge, the Court found that Tellez himself was responsible for distributing at least 50 kilograms but less than 150 kilograms of cocaine.

Tellez claims that his trial counsel was ineffective for failing to make the argument that the district court may only hold a defendant responsible for conduct that is reasonably foreseeable within the confines of the conspiracy, and must differentiate between the coconspirators and make individualized findings of fact for each defendant. Judge Echols, however, did not sentence Tellez based on the total amount of drugs distributed by the conspiracy as a whole, but only based upon that quantity of drugs that could readily be attributed to Tellez. Tellez's trial counsel cannot be deemed ineffective for failing to make a meritless argument, one that would not have prevailed and would not have made a difference in Tellez's conviction or sentence. In short, Tellez cannot demonstrate either that his counsel's conduct fell below the applicable standard, or that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

## IV.    Conclusion

For the reasons set forth herein, the Court finds that Tellez's arguments are without merit and that he is not entitled to the relief sought. His motion will therefore be denied.

An appropriate order will enter.

_Kevin H. Sharp_
Kevin H. Sharp
United States District Judge